**In the Matter of the Extradition of William James KRAUSSMAN.**
**No. 9107.**

United States District Court
D. Connecticut, Criminal Division.
May 6, 1955.

Lawrence M. Dooley, Branford, Conn., for respondent.

Simon S. Cohen, U. S. Atty., Henry C. Stone, Asst. U. S. Atty., Hartford, Conn., for prosecution.

ANDERSON, District Judge.

The United States High Commissioner for Germany has made a written requisition for the return and surrender to the jurisdiction of the United States High Commission Courts for Germany, of the person of the respondent, Kraussman, who is charged with having committed the crimes of embezzlement and forgery while acting as assistant manager and later manager of the branch of the American Express Company, Inc., in the United States Sector of West Berlin between July 1951 and November 1953. Before being apprehended in Germany, the respondent returned to this country and now resides in the State of Connecticut. The Government bases its right to extradite on Title 18 U.S.C.A. § 3185, and in this proceeding seeks from this court a finding of probable cause, which under the Statute is a prerequisite to an order by the Secretary of State of the United States requiring the return of the respondent to Germany.

The respondent pleads a lack of jurisdiction on the ground that Section 3185 does not apply; and he moves to dismiss.

Section 3185 provides in part that "whenever any foreign country or territory, or any part thereof, is occupied by or under the control of the United States,

any person who, having violated the criminal laws in force therein by the commission of any of the offenses enumerated" (including embezzlement and forgery), "departs or flees from justice therein to the United States, shall, when found therein, be liable to arrest and detention by the authorities of the United States, and on the written request or requisition of the * * * chief executive officer in control of such foreign country or territory shall be returned and surrendered as hereinafter provided to such authorities for trial under the laws in force in the place where such offense was committed." This statute, except for a minor amendment in 1949, was enacted in 1900 to implement the treaty of Paris following the Spanish-American War and was principally concerned with the occupation of Cuba at that time.

The respondent argues that from the language of the statute and its history and purpose, it is only applicable where the United States has *exclusive* occupation and control; and that Germany is not under the exclusive authority of the United States but under the joint control of the United States, England, France and the Soviet Republic.

 However, the Protocol of September, 12, 1944, amended November 14, 1944, and July 26, 1945, between these four powers, divided Berlin into parts or sectors, one of which was designated as the American sector to[9] be "occupied by the forces of the United States of America." So that while there was an over-all joint authority for Greater Berlin the court can take judicial notice that there was in fact a separate sector occupied exclusively by the United States' forces in which the judicial tribunals of the United States High Commission and the Commission's other governing branches, had full governmental powers including cognizance of criminal offenses, to the exclusion of the courts and governing units of the other occupying nations. Under these circumstances Section 3185 might well be found to be applicable. But while this case was pending and after the hear-

ing on probable cause, a treaty (U. S. Senate document #11, 84th Congress, First Session) was entered into between the United States and Western Germany which terminated the occupation of Germany by the United States and the other signatories who were the other occupying powers except the Soviet Republic. Since that time the treaty has become effective and Western Germany has become a separate sovereign nation. The treaty, however, provided in effect that the United States High Commission courts would continue in existence for several months to dispose of cases pending or proceedings based on acts or omissions which occurred prior to the effective date of the treaty. The question which presents itself here is whether or not this right of the courts to continue to function in the heart of a foreign nation whose sovereignty has been restored, is occupation or control of part of that country by the United States within the intent and purpose of the extradition statute, Section 3185. I do not think so. The occupation and control mentioned in the statute refers to full governmental authority based upon a dominating police or military force which makes the authority effective, as the Supreme Court has said:

"* * * the name of the 'United States Military Government Courts for Germany' was changed to 'United States Courts of the Allied High Commission for Germany.' They derived their authority from the President as occupation courts, or tribunals in the nature of military commissions, in areas still occupied by United States troops. Although the local government was no longer a 'Military Government,' it was a government prescribed by an occupying power and it depended upon the continuing military occupancy of the territory.

"The government of the occupied area thus passed merely from the control of the United States Department of Defense to that of the United States Department of State. The

military functions continued to be important and were administered under the direction of the Commander of the United States Armed Forces in Germany. He remained under orders to take the necessary measures, on request of the United States High Commissioner, for the maintenance of law and order and to take such other action as might be required to support the policy of the United States in Germany. * * *" Madsen v. Kinsella, 343 U.S. 341 at page 357, 72 S.Ct. 699 at page 708, 96 L.Ed. 988.

This is no longer true of the United States in the sector it occupied in Berlin or the zone it occupied in the rest of Germany. The United States High Commission is not now in the words of the statute the "chief executive officer in control of such foreign country".

█ Although the treaty excludes Berlin and Germany as a whole, the fair implication to be drawn from this exclusion is that the retention of powers by the signatories is principally for the purpose of dealing with the Soviet Republics relative to the reunification of Germany and a peace treaty, and that, in so far as it is practically possible, local governmental authority will be turned over to the Federal Republic of Germany as soon as and to the extent that it is feasible. The Government has offered no proof that the situation in the American sector of Berlin is factually different from this. Therefore, in the face of a retention of joint over-all power de jure and a policy de facto to turn over to the Federal Republic of Germany as much of the administration of local government as possible, it cannot be said that the situation is one which comes within Section 3185.

The treaty itself makes no provision for extradition from the United States under these circumstances. It appears, however, that if the respondent were returned to Germany and was there tried in the United States High Commission court, he might, if convicted, be placed in a German prison in the custody of the German authorities; that upon completion of his prison term he could be held by the German authorities and prosecuted in a German court for any offense he might be charged with which arose during his 1951–53 stay in Germany which was not committed in the performance of his duties for the occupation authorities or which had not been completely investigated by the United States High Commissioner. He might also be arrested by the German authorities for such an offense if he were tried and acquitted on the present charge by the High Commission Court and were freed in Germany, as there is no immunity provided.

With the large number of American citizens in the Service of the Government in foreign countries, and the consequent moving of such personnel between those countries and the United States, the matter of extradition should be specifically covered by treaty or statute in clearly defined terms, as basic rights of the citizens of this country, be they innocent or guilty, may be involved.

It is clear that this court would not be warranted in extending the meaning of Section 3185 to include the circumstances of this case. If the statute needs broadening to include situations not foreseen when the statue was passed in 1900 or even when it was amended in 1949, Congress should make the necessary provisions.

The motion to dismiss is granted.